Grant Building, Incorporated v. Commissioner.
Grant Bldg. v. Comm'r
Docket No. 13265. United States Tax Court
1947 Tax Ct. Memo LEXIS 102; 6 T.C.M. (CCH) 990; T.C.M. (RIA) 47238; August 26, 1947
*102 E. B. Strassburger, Esq., 2602 Grant Bldg., Pittsburgh, Pa., for the petitioner. Brooks Fullerton, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: Involved in this proceeding are deficiencies in income tax for the calendar years 1943 and 1944 in the respective amounts of $268.11 and $37,068.95, and in declared value excess-profits tax for 1944 in the amount of $14,093.03. The sole error assigned by petitioner is respondent's refusal to allow to petitioner as a basis for depreciation that portion of the cost of a building which was contributed by petitioner's lessor, the building having been erected by petitioner on the leased land. All of the facts have been stipulated and are hereby found accordingly. They may be summarized as follows: [The Facts] Petitioner, organized on December 22, 1925, as a Pennsylvania corporation, filed its tax returns for the years involved with the collector for the twenty-third district of Pennsylvania. Revere Land Company, also a Pennsylvania corporation, acquired certain land on Grant Street, Pittsburgh, in 1927. Just prior to the acquisition of this land, it entered into an agreement with petitioner's assignor, *103 Strasswill Corporation, whereby it granted to Strasswill an option to lease the land for a term of 99 years, with right of renewals, at an annual rental of $138,000. It was further agreed that Revere would "pay or cause to be paid to * * * [Strasswill] or to its nominee * * * ($1,030,877.95) [later adjusted to $1,026,227.50], of which * * * ($1,002,500) is to be used, employed and applied exclusively and solely by * * * [Strasswill] towards or on account of the cost of the construction and completion of the * * * proposed office and garage building," the construction of which was a condition of the agreement. The sum of $28,377.95 was to be used "in payment of such expenses in connection with the building project as may be found necessary by * * * [Strasswill]." The option was later assigned by Strasswill to petitioner in exchange for which petitioner issued preferred stock to Strasswill in the amount equal to Revere's contribution towards the building. Petitioner exercised the option and Revere thereafter paid over the sum of $1,026,227.50, all but $27,727.50, which was paid directly to petitioner, being paid over to a trustee bank. This total amount has been carried on Revere's *104 books in an account denominated "Cost of Land." Revere was "unwilling to invest in the securities of * * * [petitioner] but * * * [was] willing to allow * * * [petitioner] to have the advantage of disposing of a large block of its securities to strong holders * * *." All of the funds were used to defray the cost of constructing the Grant Building. Soon after notice of exercise of the option, petitioner and Revere entered into an "Agreement of Lease," dated August 16, 1927, providing for a term of 99 years, renewable nine times at the lessee's option. The lease further provided for an annual rental of $138,000, later reduced to $130,140, as a result of receipt by the lessor of an award for condemnation in the widening of Grant Street. In addition, petitioner obligated itself to demolish existing structures and to erect a building at a cost of not less than $3,000,000; in accordance with plans and specifications approved by the lessor, to pay taxes and insurance, to replace the building in case of destruction or damage, and further "* * * during the term of this lease the Lessee [petitioner] shall at all times keep in good order and repair inside and out all buildings *105 and structures hereafter constructed on or appurtenant to said premises, including any and all equipment which may be therein contained, and shall from time to time make renewals and replacements of such equipment so that at all times said buildings, structures and equipment shall be in good order, condition and repair." Upon termination of the lease, petitioner was obliged to return the premises to Revere, together with the structures thereon. The building, a thirty-five story structure with a five-story underground garage, constructed of steel and brick, was completed on December 31, 1929, and had a depreciable life of fifty years from the date of completion. Petitioner has been regarded as the owner of the building and Revere the owner of the land. In a joint petition to the Board of Assessors of the City of Pittsburgh for adjustment of property tax filed in 1936 by petitioner and Revere, it was stated that petitioner "owns and operates" the building and that Revere "is the owner of the land" and "has no further interest in said real estate." With respect to the calendar years 1930 to 1945, both inclusive, petitioner claimed deductions for depreciation of the building computed *106 on an original cost of $5,598,917.34 increased by capital expenditures in respect of subsequent construction and on an estimated useful life of the building of forty years. [Opinion] On its 1939, 1940, and 1941 tax returns, Revere claimed no deduction for depreciation, nor do the returns reflect any depreciation taken in prior years, nor the ownership of any depreciable property. However, in a proceeding before the Tax Court, reported as , Revere was allowed depreciation on its capital investment of $1,026,227.50 in the building at the rate of 2 percent with respect to the years 1939, 1940, and 1941. Respondent determined that petitioner "[is] not entitled to depreciation deduction on $1,026,227.50, the portion of the cost of the Grant Building furnished by Revere Land Company, under the terms of the lease agreement entered into between you and that Company on August 16, 1927, and certain other agreements relating thereto." Petitioner seeks to distinguish the present proceeding from , and Commissioner v. Arundel-Brooks Concrete Corp. (C.C.A., 4th Cir.), , *107 where a similar question arose. In all three cases the issue is the amount of the basis for depreciation permitted where part of the cost of the depreciating property has been paid by another. The distinguishing element relied on here is the assertion that although petitioner's lessor contributed a part of the cost of the building which petitioner was required to erect on the lessor's property, that contribution was intended by the parties to constitute a consideration for the issuance of a block of petitioner's stock, and hence was included in its investment. We do not find it necessary to pass upon the legal validity of petitioner's proposition, although it may be said in passing that it has obvious theoretical infirmities. In the Detroit Edison case, for example, the capital assets involved were assumed to be the unequivocal property of the taxpayer and there seems no obvious impediment to the issuance of stock to represent the ownership by the issuing corporation of assets so acquired. Yet it is difficult to believe that that additional factor alone would have been sufficient to reverse the conclusion in the Detroit Edison case. However that may be, we do not view the present *108 facts as supporting petitioner's theory. The original and preliminary agreement creating the lessor's obligation was entered into between the lessor and petitioner's assignor, who for purposes of simplicity may be referred to as the promoter. That agreement required the lessor to "pay or cause to be paid to the party of the second part [the promoter] or its nominee * * * ($1,002,500) * * * to be used * * * exclusively and solely by the party of the second part towards or on account of the cost of the construction" of the building. The payment made as a result is what is now in issue. Subsequently petitioner became "the nominee," and "An Agreement of Lease" between the lessor and petitioner resulted. The payment in question was actually made by the lessor almost in its entirety to a trustee bank under an agreement between petitioner and the building contractor. Petitioner issued a part of its stock for the assignment to it of the promoter's contract. But it seems too clear for controversy that the money was paid by the lessor through the promoter and petitioner "exclusively and solely" for its contribution toward the building cost. And what it contributed petitioner did not. *109 It might of course be possible for lessor and lessee both to be denied depreciation in an appropriate case. See . The lessee may have no basis, the property having cost it nothing, and the lessor no loss due to the lessee's agreement to replace. , affirmed (C.C.A., 4th Cir.), , certiorari denied, . But here, the lessor has been sustained in its effort to depreciate the very contribution to which this petitioner now lays claim, and on the very ground which respondent now advances in opposition. . We find no significant fact shown here or omitted there sufficient to warrant the inconsistency of a present holding that petitioner is entitled to be recompensed for the same investment which its lessor made and for which the latter is claiming and has been allowed recoupment. The existence of a depreciable investment is not necessarily synonymous with title. Petitioner's contention that it owns the entire building, to the exclusion of the lessor, would not entitle it to *110 depreciate any amount in excess of its actual cost, any more than was the undisputed owner in the Detroit Edison case. Even granting its construction of the lease, a point we do not pass upon, the result might be to assimilate this to the cases cited where neither party can show a loss for the recoupment of which depreciation deductions are appropriate. It would in no sense confirm the claim on petitioner's part to a depreciation base beyond the actual cost of the property to it. But in fairness to the correctness of the result in , it should be noted, in the words of this petitioner's counsel at the hearing: "* * * the building goes back to the Revere Land Company, and if it is obsolete before the 99 years [the expiration of the lease], a new building must be built and that goes back to the Revere Land Company." To that extent, at least, an economic loss from depreciation would seem to be a potentiality. See . But be that as it may, petitioner will be made whole if, by the time the present building becomes worthless, petitioner's actual investment is recovered through depreciation deductions. Any *111 payment to it by means of such deductions, of the lessor's contribution to cost of either land or building would be as gratuitous as would have been the similar payments in the Detroit Edison case. We perceive no error in the determined deficiency. Decision will be entered for the respondent.